UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BRENDA PACHECO, MAXIMILIANO LOPEZ, and CAROL BUCHANAN, on behalf of themselves and a class of those similarly situated, | §<br>§<br>§<br>§<br>§ | CV. NO. 5:14-CV-121-DAE |
| Plaintiffs, | §<br>§ | |
| vs. | §<br>§ | |
| WESSAM ALDEEB; ERSAN ALDEEB; SAADIA RACHIK; PALMS ADMINISTRATIVE SERVICES, LLC; LA CANTERA SUBWAY, INC.; NORTH STAR MARBLE SLAB INC.; GREAT AMERICAN COOKIES-N-CREAM, LLC; PYRAMIDS EXCHANGE, LLC; LEGACY MARBLE SLAB, INC.; WESTOVER MARBLE SLAB, INC.; LEGACY SUBWAY, INC.; INGRAM PARK MARBLE SLAB, LLC; and NORTH STAR SWIRLY, LLC, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| Defendants. | §<br>§<br>§ | |

_____

ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CONDITIONAL
CERTIFICATION

Before the Court is a Motion for Conditional Class Certification and

Notice to Potential Class Members filed by Plaintiffs Brenda Pacheco,

Maximiliano Lopez, and Carol Buchanan (collectively, "Plaintiffs"), on behalf of

themselves and all others similarly situated.  (Dkt. # 29.)  On March 30, 2015, the

Court held a hearing on the Motion.  Philip J. Moss and Sarah Donaldson, Esqs.,

represented Plaintiffs, and Haroon Rafati, Esq.,  represented Defendants Wessam

Aldeeb; Ersan Aldeeb; Saadia Rachik; Palms Administrative Services, LLC; La

Cantera Subway, Inc.; North Star Marble Slab Inc.; Great American Cookies-N-

Cream, LLC; Pyramids Exchange, LLC; Legacy Marble Slab, Inc.; Westover

Marble Slab, Inc.; Legacy Subway, Inc.; Ingram Park Marble Slab, LLC; and

North Star Swirly, LLC (collectively, "Defendants").  After careful consideration

of the supporting and opposing memoranda and the parties' arguments at the

hearing, the Court, for the reasons that follow, **GRANTS IN PART** Plaintiff's

Motion for Conditional Certification and Notice to Potential Class Members.

<u>BACKGROUND</u>

This case arises out of Plaintiffs' employment by Defendants as food

service workers.  Defendants operate fast food franchise establishments in the

San Antonio area, including Subway, Marble Slab Creamery, and Great American

Cookies franchises.  ("Am. Compl.," Dkt. # 2 at 1.)  Plaintiff Brenda Pacheco

("Pacheco") worked as an area manager for Defendants from approximately 2007

to 2009 and from 2009 to 2013.  ("Pacheco Decl.," Dkt. # 18-1 ¶ 3.)  As an area

manager, Pacheco's tasks included preparing and serving food, scheduling

employee shifts, operating the cash register, catering events, and cleaning retail

stores.  (<u>Id.</u> ¶ 4.)  Pacheco was also responsible for personnel decisions, including

hiring and firing, at all five of Defendants' franchise locations.  (Ex. B, Dkt. # 31-2 ¶ 6.)  Pacheco worked out of several of Defendants' retail locations, including Highway 151, the Shops at La Cantera, Ingram Park Mall, and North Star Mall. (Pacheco Decl. ¶ 3.)

Plaintiff Maximiliano Lopez ("Lopez") worked for Subway franchises owned by Defendants from 2012 through 2013.  ("Lopez Decl.," Dkt. # 18-2 ¶ 2.) He was employed as a crew member, and later as a store manager, and worked out of the franchise locations at the Shops at La Cantera and the Legacy shopping center.  (Id. ¶ 3.)  Lopez's tasks included preparing and serving food, scheduling employee shifts, operating the cash register, and cleaning retail stores.  (Id. ¶ 4.) Plaintiff Carol Buchanan ("Buchanan") worked as a food service worker for Defendants in 2013.  (Am. Compl. ¶ 28.)

Plaintiffs allege that Defendants failed to pay them and other similarly situated employees overtime for hours worked in excess of forty hours per week. (Pacheco Decl. ¶ 7; Lopez Decl. ¶ 7.)  Plaintiffs further allege that Defendants required them and other similarly situated employees to perform unrecorded and unpaid work before and after shifts, and to clock out during compensable break time.  (Pacheco Decl. ¶¶ 8–12; Lopez Decl. ¶¶ 8–11.)  Finally, Plaintiffs allege that Defendants regularly made unlawful deductions from the paychecks of Plaintiffs and similarly situated employees.  (Pacheco Decl. ¶ 13; Lopez Decl. ¶ 12.)

Plaintiffs filed a First Amended Complaint in this Court on February 11, 2014, asserting that Defendants failed to pay overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, on behalf of themselves and all similarly situated persons employed by Defendants in the three years prior to filing the complaint.  (Am. Compl. ¶¶ 41, 43–44.)  Plaintiffs seek unpaid overtime wages, liquidated damages, and attorneys' fees and costs.  (Id. at 10.)

The Court previously held a hearing on Plaintiffs' original motion for conditional class certification on October 23, 2014.  While Defendants had not responded to Plaintiffs' motion for conditional certification, counsel for Defendants represented at the hearing that Plaintiffs were paid on a salary basis, and were thus not representative of the class.  To resolve this factual dispute, the Court ordered the parties to engage in limited discovery to determine whether Plaintiffs were hourly employees.  (Dkt. # 26.)

Following this limited discovery, Plaintiffs filed the instant Motion seeking conditional certification as a collective action on December 8, 2014.  (Dkt. # 29.)  Defendants filed a Response on December 15, 2014 (Dkt. # 31), and Plaintiffs filed a Reply on December 19, 2014 (Dkt. # 33).

<u>LEGAL STANDARD</u>

An employee may bring an action for violating the minimum wage and overtime provisions of the FLSA either individually or as a collective action

4

on behalf of himself and "other employees similarly situated."  29 U.S.C. § 216(b).

Because the FLSA requires employee-class members to affirmatively opt-in, a

plaintiff can seek "conditional class certification" from the court, which permits

the plaintiff to "send[] [a] court-approved written notice to employees, who in turn

become parties to a collective action only by filing written consent with the court."

Genesis Healthcare Corp. v. Symczk, 133 S. Ct. 1523, 1527 (2013) (citations

omitted).

Although the Fifth Circuit has declined to adopt a specific test to

determine when a court should conditionally certify a class or grant a notice in a

§ 216(b) action, the majority of courts within the Fifth Circuit have adopted the

approach set forth in Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987).

Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1216 (5th Cir. 1995) (noting

acceptable approaches include either the Lusardi approach or the "spurious class

action" approach set forth in Shushan v. Univ. of Colo., 132 F.R.D. 263 (D. Colo.

1990)), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90

(2003); Vanzzini v. Action Meat Distribs., Inc., 995 F. Supp. 2d 703, 719 (S.D.

Tex. 2014) (following Lusardi); Mateos v. Select Energy Servs., LLC, 997 F.

Supp. 2d 640, 643 (W.D. Tex. 2013) (same); Tice v. AOC Senior Home Health

Corp., 826 F. Supp. 2d 990, 994 (E.D. Tex. 2011) (same); Marshall v. Eyemasters

of Tex., Ltd., 272 F.R.D. 447, 449 (N.D. Tex. 2011) (same).

The <u>Lusardi</u> approach is a two-stage inquiry involving a "notice stage" and a merits or decertification stage.  <u>Mooney</u>, 54 F.3d at 1213–14.  At the notice stage, a "court determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class."  <u>Acevedo v. Allsup's Convenience Stores, Inc.</u>, 600 F.3d 516, 519 (5th Cir. 2010).  If the court determines that the proposed class members are similarly situated and conditional certification is warranted, the plaintiff has the opportunity to send notice to potential class members, who are then permitted to opt in to the suit.  <u>Id.</u> at 519.  "The court's determination at this stage is made using a 'fairly lenient standard' because the court generally has minimal evidence" and because "[t]he remedial nature of the FLSA . . . militate[s] strongly in favor of allowing cases to proceed collectively."  <u>Lee v. Metrocare Servs.</u>, 980 F. Supp. 2d 754, 759 (N.D. Tex. 2013); <u>Tolentino v. C & J Spec-Rent Servs. Inc.</u>, 716 F. Supp. 2d 642, 647 (S.D. Tex. 2010); <u>see also</u> <u>Jones v. SuperMedia Inc.</u>, 281 F.R.D. 282, 287 (N.D. Tex. 2012); <u>Allen v. McWane, Inc.</u>, No. Civ.A.2:06-CV-158, 2006 WL 3246531, at *2 (E.D. Tex. 2006).

Once plaintiffs have opted in and discovery is largely complete, the defendant can file a decertification motion, asking the court to reassesses whether the claimants are similarly situated.  <u>Mooney</u>, 54 F.3d at 1214.  At that point, the court can fully evaluate the merits of class certification and can choose to decertify

the class.  Id.  This Court's analysis here need only address first stage of the
inquiry.

DISCUSSION

Plaintiffs seek to certify a class consisting of:

> All current and former hourly-paid employees of Defendants who
> worked for Defendants in Defendants' Subway, Marble Slab
> Creamery, and Great American Cookies stores in Bexar County and
> Kendall County, Texas at any time during the three-year period
> preceding the filing of Plaintiffs' Original Complaint.

(Dkt. # 18 at 2.)  Defendants make two arguments as to why conditional
certification is unwarranted.  First, Defendants argue that Plaintiffs are not
similarly situated to the proposed class members because Plaintiffs worked in a
managerial capacity.  (Dkt. # 31 at 6–8.)  Second, Defendants argue that Plaintiffs
have failed to present sufficient evidence that Plaintiffs were victims of a common
policy or practice in violation of the FLSA.  (Id. at 9–11.)

Conditional certification is only proper when the class members were
the victims of a single decision, policy, or plan infected by discrimination.
Mooney, 54 F.3d at 1214.  Accordingly, a plaintiff must generally make three
showings to obtain conditional certification: "(1) there is a reasonable basis for
crediting the assertion that aggrieved individuals exist, (2) [] those aggrieved
individuals are similarly situated to the plaintiff in relevant aspects given the
claims and defenses asserted, and (3) [] those individuals want to opt-in to the

7

lawsuit." Casanova v. Gold's Tex. Holdings Grp., Inc., No. 5:13-CV-1161-DAE, 2014 WL 6606573, at *2 (W.D. Tex. Nov. 19, 2014) (quoting Walker v. Honghua Am., LLC, 870 F. Supp. 2d 462, 465–66 (S.D. Tex. 2012)).

I.     Whether Aggrieved Individuals Exist

        Defendants argue that Plaintiffs have presented no evidence that Defendants engaged in a policy or practice that violates the FLSA, and thus that there is no reasonable basis for the assertion that aggrieved individuals exist.  (Dkt. # 31 at 9.)  Defendants specifically argue that (1) Plaintiffs have made no showing of overtime worked, (2) Plaintiffs have no evidence that Defendants had a policy of not paying employees for all time worked, and (3) deductions from Plaintiffs' pay are not violations under the FLSA.  (Id. at 9–11.)

        At the notice stage, allegations in pleadings and affidavits are generally sufficient to support a claim for conditional certification.  Mooney, 54 F.3d at 1213–14.  However, "most courts require some factual support" for allegations presented in the complaint, either in the form of affidavits or other supporting evidence.  Aguirre v. SBC Commc'ns, Inc., No. CIV.A. H-05-3198, 2006 WL 964554, at *6 (S.D. Tex. Apr. 11, 2006) (finding lack of a factual basis because the plaintiffs did not submit affidavits or any other evidence apart from the statements in the complaint and motion for notice); see also Jones, 281 F.R.D. at 289 (noting that declarations regarding compensation and job duties "are ideal for

8

analysis of whether the putative class members were together the victims of a single decision, policy, or plan").

Although the Fifth Circuit has not spoken definitively on the issue, most district courts agree that affidavits submitted at the notice stage of class certification need not be in a form admissible at trial. Lee, 980 F. Supp. 2d at 760 (citing White v. MPW Industrial Servs., Inc., 236 F.R.D. 363, 368 (E.D. Tenn. 2006)).  A holding otherwise would "defeat the purpose of the two-stage analysis," since the first stage sets a purposefully low bar that typically results in conditional class certification.  White, 236 F.R.D. at 368; Walker, 870 F. Supp. 2d at 465.

Accordingly, most courts only require that a declarant can demonstrate that the allegations in his declaration are based on personal knowledge.  See, e.g., Lee, 980 F. Supp. 2d at 762 (listing cases); Dooling v. Bank of the W., No. 4:11-CV-00576, 2012 WL 2417591, at *4 (E.D. Tex. June 26, 2012); Lang v. DirecTV, Inc., No. 10-1085 "G"(1), 2011 WL 5934607, at *9 (E.D. La. Dec. 30, 2011).  "Personal knowledge can include inferences and opinions, so long as they are grounded in personal observation and experience."  United States v. Cantu, 167 F.3d 198, 204 (5th Cir. 1999) (internal quotation marks omitted).

Plaintiffs have submitted declarations by Pacheco, Lopez, and Miguel Robles ("Robles"), who worked in one of Defendants' Subway franchises as a crew member from January 2013 to September 2013.  ("Robles Decl.," Dkt. # 33-1

9

¶ 3.)  Pacheco attests that she is familiar with Defendants' compensation policies through her role as an area manager and because she spoke with "many employees on many occasions regarding [Defendants'] pay practices and policies."  (Pacheco Decl. ¶ 6.)  Lopez and Robles similarly attest that they are familiar with Defendants' compensation policies through their work as employees and their discussions with other employees.  (Lopez Decl. ¶ 6; Robles Decl. ¶ 5.)  These statements are sufficient to show personal knowledge of Defendants' compensation practices.

In support of the allegation that Defendants' food service employees were not paid overtime, Pacheco, Lopez, and Robles attest that they each worked overtime and were paid the same hourly rate for their overtime work, and spoke with other unnamed employees who stated they also did not receive overtime pay for time worked over forty hours per week.  (Pacheco Decl. ¶ 7; Lopez Decl. ¶ 7; Robles Decl. ¶ 6.)  Each attests that Defendants failed to pay them for all time worked, and that Defendants deducted pay from their paychecks based on cash register shortages.  (Pacheco Decl. ¶¶ 8–13; Lopez Decl. ¶¶ 8–12; Robles Decl. ¶¶ 7–9.)  They further attest that Defendants' policies of denying overtime, failing to pay for all time worked, and deducting money from employees' pay based on cash register receipt totals applied to them and "many, if not all" of the employees working in Defendants' stores.  (Pacheco Decl. ¶ 6; Lopez Decl. ¶ 6; Robles Decl.

10

¶ 5.)  The paystubs of Pacheco, Lopez, and Robles further indicate that each worked more than eighty hours in a two-week pay period and did not receive overtime pay.  (See, e.g., Dkt. # 29-7 at 15–16, 79–82; Ex. A-1, Dkt. # 33-1.) Given the lenient standard at the conditional certification phase, this evidence is sufficient to credit the allegations that Defendants failed to appropriately compensate Plaintiffs and similarly situated employees as required by the FLSA.

Defendants argue that the evidence does not show that Buchanan worked more than forty hours in a week.  (Dkt. # 31 at 9.)  Buchanan's timecard report, however, shows that she worked 40.98 hours the week of July 28, 2013, and 41.34 hours the week of August 4, 2013, and was paid at a flat rate.  (See Ex. C, Dkt. # 29-7 at 45.)  This evidence, in combination with the declarations and corroborating paystubs of Pacheco, Lopez, and Robles, is sufficient at this stage of the Lusardi analysis to show that Plaintiffs and similarly situated employees were not paid overtime for time worked over forty hours per week, and thus that aggrieved individuals exist.

Defendants further argue that Plaintiffs have no evidence of a common policy on the part of Defendants of forcing employees to work off of the clock.  (Dkt. # 31 at 10.)  Pacheco, Lopez, and Robles all attest that Defendants consistently deducted a thirty minute lunch break from their paychecks even though they generally worked through lunch.  (Pacheco Decl. ¶ 9; Lopez Decl. ¶ 9;

Robles Decl. ¶ 8.)  Pacheco and Lopez further attest that Defendants required them to perform work outside of their shifts, including scheduling employee shifts, traveling between stores, and catering events, and that Defendants refused to compensate them for this work.  (Pacheco Decl. ¶ 10–11; Lopez Decl. ¶ 10–11.) Finally, Pacheco attests that Defendants required employees, including Pacheco, to clock out in order to use the restroom, and would not allow employees to record hours worked during such time.  (Pacheco Decl. ¶ 12.)  These statements, based on personal knowledge, are sufficient to show a reasonable basis for crediting the existence of a policy of forcing employees to work off the clock for the purposes of conditional certification.

Finally, Defendants argue that their practice of taking deductions from employees' paychecks based on cash register shortages is not a violation of the FLSA, citing Mayhue's Super Liquor Stores, Inc. v. Hodgson, 464 F.2d 1196 (5th Cir. 1972).  In that case, however, the Fifth Circuit found that an agreement whereby employees repaid their employer for cash register shortages violated the FLSA to the extent that it reduced an employee's wage below the statutory minimum.  Id. at 1199.  Defendant Wessam Aldeeb attests that "[t]he overwhelming majority of our standard employees . . . are paid at or close to minimum wage," suggesting that Defendants' admitted cash deductions could reduce employee wages below the statutory minimum.  (Ex. B, Dkt. # 31-2 ¶ 3.)

12

Defendants' argument is thus without merit, and Plaintiffs have made a sufficient showing that aggrieved individuals exist.

## II.   Whether the Aggrieved Individuals Were Similarly Situated

Plaintiffs argue that they are similarly situated to potential class members because they performed the same food service-related duties as class members, including preparing and serving food, cleaning the restaurants, and operating the cash register.  (Dkt. # 18 at 6.)  Plaintiffs further argue that regardless of job title or duties, they are similarly situated to potential class members because Defendants' illegal compensation policies applied to all employees.  (Dkt. # 33 at 3.)  Defendants respond that Plaintiffs were managers and thus were not similarly situated to non-managerial employees, that Pacheco is not similarly situated to the other plaintiffs, and that Pacheco and Buchanan are not similarly situated because they brought their claims in bad faith.  (Dkt. # 31 at 5–8.)

"The potential class plaintiffs are considered similarly situated to the named plaintiffs if they are similarly situated with respect to their job requirements and . . . their pay provisions."  Tolentino, 716 F. Supp. 2d at 649–50 (internal quotation marks omitted).  "The court need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated," Maynor v. Dow Chem. Co., No. CIV. A. G-07-0504, 2008 WL 2220394, at *7 (S.D. Tex. May 28, 2008), and "[s]light differences in job duties or functions do

13

not run afoul of the similarly situated requirement," Walker v. Honghua Am., LLC, 870 F. Supp. 2d 462, 468 (S.D. Tex. 2012). "[T]he relevant inquiry is whether the potential class members performed the same basic tasks and were subject to the same pay practices." Tice v. AOC Senior Home Health Corp., 826 F. Supp. 2d 990, 996 (E.D. Tex. 2011). The purpose of the similarly situated requirement is to ensure that collective actions will promote the economies of scale envisioned by the FLSA. Maynor, 2008 WL 2220394, at *7.

The Court finds that Lopez and Buchanan are similarly situated to the proposed class. The fact that Plaintiffs served in a managerial capacity, standing alone, does not preclude them from representing employees who worked for Defendants in a non-managerial capacity. See, e.g., Aguilar v. Complete Landsculpture, Inc., No. Civ.A.3:04 CV 0776 D, 2004 WL 2293842, at *4 (N.D. Tex. Oct 7, 2004) (finding that foremen with hiring and firing authority were similarly situated to laborers where all employees were compensated under the same pay scheme). While Lopez and Buchanan had supervisory responsibilities, including scheduling employee shifts, they were paid on the same hourly basis as non-supervisory employees. (Ex. C, Dkt. # 29-7 at 45, 49.) Lopez attests that he performed duties also shared by non-supervisory employees, including preparing and serving food, operating the cash register, and cleaning. (Lopez Decl. ¶ 4.) He further attests that he was subject to the same policies of non-payment for

14

overtime, requiring employees to work off of the clock, and deductions for cash register shortages as non-supervisory employees.  (Id. ¶¶ 7–9, 12–14.)  Lopez and Buchanan's pay provisions and duties are thus sufficiently similar to those of the proposed class to render than similarly situated to the proposed class.

Pacheco, however, is not similarly situated to Buchanan and Lopez. Pacheco served as an area manager for Defendants, and was thus responsible for overseeing the operation of all five of Defendants' restaurants.  (Ex. B., Dkt. # 31-2 ¶ 6.)  While her duties may have overlapped with those of store managers and non-managerial employees, her authority to make personnel decisions at all of Defendants' locations appears to have been unique.  (See id. & at 7–10.) Pacheco's compensation scheme was also unique—in addition to receiving an hourly wage, she also received a salary of $150 to $250 per week, as well as sales bonuses tied to the performance of restaurant locations where she had worked during the relevant time period.  (Id.; see also, e.g., Ex. C, Dkt. # 29-7 at 20, 25.) By contrast, Lopez and Buchanan's responsibilities were limited to a single restaurant location, and both were paid purely at an hourly rate.  (Ex. C, Dkt. # 29-7 at 45–46, 49–50.)  Additionally, unlike Lopez or Buchanan, Pacheco was initially classified by Defendants as an independent contractor before being formally hired as an employee.  (Ex. C, Dkt. #29-7 at 7–14; Ex. B, Dkt. # 31 ¶ 6.)

Plaintiffs argue that they are nevertheless entitled to conditional certification because all Plaintiffs, regardless of job duties, were subject to the same illegal policies.  (Dkt. #33 at 2.)  The cases Plaintiffs cite for this proposition, however, are distinguishable from the instant action.  In Aguilar v. Complete Landsculpture, Inc., the foremen and laborers found to be similarly situated were all subject to the same "block rate" payment scheme in which all employees were paid a fixed amount for each block of ten hours worked.  2004 WL 2293842, at *4. Here, while all Plaintiffs were paid an hourly wage, Pacheco also received a salary and performance-based bonus payments.

In Realite v. Ark Restaurants Corp., the various jobs included in the conditionally certified class were all non-managerial, hourly employees subject to identical compensation practices.  7 F. Supp. 2d 303, 307–08 (S.D.N.Y. 1998). Here, Pacheco is an area manager whose compensation is not limited to the hourly wage received by Lopez, Buchanan, and the proposed class.  Finally, the court in Zaniewski v. PRRC Inc. found the plaintiffs to be similarly situated to the conditionally certified class where all plaintiffs and class members were assistant store managers with the same basic duties and responsibilities.  848 F. Supp. 2d 213, 227–28 (D. Conn. 2012).  As already stated, Pacheco's responsibilities, encompassing management and personnel decisions for five different restaurant

16

locations, were substantially different from both the other named plaintiffs and the proposed class.[1]

The "similarly situated" inquiry requires similarity in job duties and pay scheme in part because those factors determine whether an employee is exempt from the FLSA's requirements. See, e.g., 29 C.F.R. § 541.100(a) (defining the executive employee exemption with reference to salary rate, management role, and personnel responsibilities); id. § 541.200(a) (defining the administrative employee exemption with reference to salary rate and job duties). Requiring a prospective class to share similar job requirements and pay provisions ensures the economy of scale and judicial efficiency envisioned by the FLSA by avoiding the need for individualized inquiries into whether a defendant's policy violates the FLSA as to some employees but not others. See Tolentino, 716 F. Supp. 2d at 647 ("[T]here must be a showing of some . . . nexus that binds the claims so that hearing the cases together promotes judicial efficiency.").

Because Pacheco's additional responsibilities and different compensation scheme will require a different analysis than that presented with respect to employees whose only compensation is an hourly wage, the Court finds that Pacheco may proceed as an individual plaintiff, but not on behalf of a similarly

---

[1] Donohue v. Francis Servs., Inc., also cited by Plaintiffs, includes no discussion of the job duties and pay schemes of the named plaintiffs and class members found by that court to be similarly situated. No. Civ.A. 04-170, 2004 WL 1161366, at *2–3 (E.D. La. May 24, 2004).

situated class of hourly wage employees.[2] See Tolentino, 716 F. Supp. 2d at 651 (requiring named plaintiff whose management responsibilities would "involve a different analysis than that presented with respect to non-supervisory employees" to proceed individually); Yaklin v. W-H Energy Servs, Inc., No. C-07-422, 2008 WL 1989795, at *3 (S.D. Tex. May 2, 2008) (requiring a named plaintiff supervisor to proceed alone where his job responsibilities were different from those of the other named plaintiffs).

Defendants additionally argue that Buchanan is not similarly situated because her claim was brought in bad faith. While Defendants have submitted evidence that Buchanan's employment with Defendants ended acrimoniously, Buchanan's timecard reports indicate that she was paid at an hourly rate and was not paid overtime for hours worked over forty hours per week. Having thus presented a valid claim under the FLSA, the Court cannot find that Buchanan has joined this action in bad faith.[3]

---

[2] While Plaintiffs are correct that the limited evidence currently before the Court indicates that Pacheco would not qualify for the executive employee exemption, that determination need not be made at this stage of the Lusardi analysis.

[3] While none of the parties have raised the issue, the Court further finds that named plaintiff Rebecca Calvillo has made no showing that she is similarly situated to the proposed class, and must proceed individually if she still wishes to prosecute this action. While Plaintiffs' counsel withdrew from representation of Calvillo due to her failure to communicate with counsel (Dkt. # 17), she remains a named plaintiff in this case.

III.   Whether There is Evidence That Similarly Situated Aggrieved Individuals Will Join the Suit

In addition to requiring the existence of similarly situated individuals, most courts require that a plaintiff present some evidence that those individuals are likely to opt-in to the lawsuit.  See Casanova, Inc. v. Gold's Tex. Holdings Grp., No. SA:13-CV-1161-DAE, 2014 WL 6606573, at *2 (quoting Walker, 870 F. Supp. 2d at 465–66); Carey v. 24 Hour Fitness USA, Inc., No. CIV. A. H-10-3009, 2012 WL 4857562, at *3 (S.D. Tex. Oct. 11, 2012) ("[T]ypically a showing is necessary that at least a few similarly situated individuals seek to join the lawsuit.").

Two opt-in plaintiffs, Miguel Robles and Amelly Rodriguez, have filed notices of consent to join.  (Dkt. ## 13, 15.)  Robles and Lopez attest that there are "many" current and former employees of Defendants who would join a lawsuit to recover unpaid overtime wages, and Lopez specifies that there were between 100 and 125 active employees at any given time during the term of his employment.  (Lopez Decl. ¶ 14; Robles Decl. ¶ 13.)  While the evidence presented is minimal, the Court finds that Plaintiffs have satisfied the lenient burden at the conditional notice stage to demonstrate the existence of similarly situated aggrieved individuals who wish to join the suit.  See Tolentino, 716 F. Supp. 2d at 653 (finding two declarations of similarly situated individuals and the complaint sufficient to demonstrate the existence of employees who would opt in);

19

Lee, 980 F. Supp. 2d at 768 ("[N]umerosity is not a requirement for conditional

certification under the Lusardi approach."); Jones, 281 F.R.D. at 291 (holding that

named plaintiffs' four declarations and their amended complaint satisfied their

burden to demonstrate the existence of other employees who would opt in).

Because Plaintiffs have demonstrated a basis for conditional

certification, the Court **GRANTS IN PART** their Motion for Conditional Class

Certification and defines the class as:

> All persons employed by Wessam Aldeeb, Ersan Aldeeb, and Sadia
> Rachik and paid at an hourly wage in their Subway, Marble Slab
> Creamery, and Great American Cookies franchises in Bexar County
> and Kendall County, Texas from [insert date 3 years prior to date
> notice is sent], through [insert date notice is sent].

IV.   Plaintiff's Proposed Notice to the Potential Class

Plaintiffs seek approval of a proposed notice setting out the scope of

the litigation and the opt-in procedure, as well as a proposed consent to join form

that potential plaintiffs can use to opt-in to the litigation.  (Dkt. # 18 at 8.)

Plaintiffs propose sending notice by first-class mail, email, Facebook message, and

posting in Defendants' Subway, Marble Slab Creamery, and American Cookie

franchises.  (Id. at 8–9.)  Defendants object to the notice request as overly

burdensome and request that notice be limited to mail and email only.  (Dkt. # 31

at 11.)  Defendants argue that posting notices in Defendants' businesses "would

only serve to further the damage to Defendants' reputation and businesses already

20

caused by the publication of an article regarding this suit in the San Antonio Express-News." (Id.)

The Court is not persuaded that posting the notice in Defendants' stores is unduly burdensome. Defendants' concerns can be easily addressed by posting the notice in such a way that it will be readily accessible to employees but not to customers. Courts have approved physical posting as an appropriate form of notice in FLSA actions, and have even approved notice through publication in newspaper and radio advertisements over objections that such publication could cause reputational harm. See Rodriguez v. Mech. Tech. Servs., Inc. 299 F.R.D. 154, 156–57 (W.D. Tex. 2014) (approving publication of notice in radio and newspapers despite defendants' objection that such notice may lead to negative publicity and harm defendants' businesses); Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 493 (E.D. Cal. 2005) (approving notice by posting in defendant's workplace over defendant's objections that such posting would be "punitive" and unnecessary); Johnson v. Am. Airlines, Inc., 531 F. Supp. 957, 961 (N.D. Tex. 1982) (approving notice by direct mail, posting notice on company bulletin boards, and publishing the notice in a company magazine).

Defendants have raised no other objections to Plaintiffs' proposed notice, and the Court approves the notice and the proposed means of issuance as

reasonable.[4]  The Court also directs, however, that reference to Brenda Pacheco be removed from the notice, as the Court has determined that she must proceed with her claims individually.

V.     Equitable Tolling

Finally, Plaintiffs request that the Court equitably toll the statute of limitations to prevent harm to potential opt-in class members.  (Dkt. # 29 at 6.)  In a collective action under the FLSA, an action is considered commenced in the case of an unnamed plaintiff on the date on which written consent is filed with the court.  29 U.S.C. § 256.  The Fifth Circuit has adopted a strict view of the FLSA's limitations provision.  McKnight v. D. Houston, Inc., 756 F. Supp. 2d 794, 808 (S.D. Tex. 2010) (citing Atkins v. General Motors Corp., 701 F.2d 1124, 1130 n.5 (5th Cir. 1983)).  "Equitable tolling may be applied only if it is shown that a plaintiff acted diligently and the delay concerns extraordinary circumstances." Lee, 980 F. Supp. 2d at 769 (internal quotation marks omitted).  "The party who invokes equitable tolling bears the burden of proof."  Teemac v. Henderson, 298 F.3d 452, 457 (5th Cir. 2002).

Plaintiffs contend that equitable tolling is justified due to "Defendants' groundless opposition to Plaintiffs' Motion."  (Dkt. # 29 at 6.)

---

[4] While Defendants request that notice be limited to mail and email, they provide no argument that the use of Facebook messaging is improper or unduly burdensome.  The Court will therefore allow for its use as a means of notice, as requested by Plaintiffs.

Defendants' opposition, however, was not groundless—the Court agrees with Defendants that Pacheco is not similarly situated to the other named plaintiffs, and their arguments concerning Lopez and Buchanan's managerial positions and the sufficiency of the evidence submitted are more than colorable.  Additionally, defense counsel's representation at the October 23, 2014 hearing that Plaintiffs were paid on a salary basis, although incorrect as to Lopez and Buchanan, was at least partially correct as to Pacheco, who was paid a weekly salary as well as an hourly wage.  The Court therefore finds that Plaintiffs have not shown the extraordinary circumstances necessary to justify equitable tolling, and **DENIES** their request to toll the limitations period.

<u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS IN PART** Plaintiffs' Motion for Conditional Certification and Notice to Potential Class Members (Dkt. # 29).

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, March 31, 2015.

David Alan Ezra
Senior United States Distict Judge

23